## CIRCUIT COURT OF LOUDOUN COUNTY

Countryside Proprietary, Inc.

    v.

Thomas W. King
and Susan L. King

Case No. (Chancery) 12815

BY JUDGE JAMES H. CHAMBLIN

January 7, 1991

In this suit, The Countryside Proprietary, Inc. (the "Proprietary") asks this Court to restrain and enjoin permanently the Defendants, Thomas W. King and Susan L. King from allowing a flagpole to remain on their property because the flagpole was not approved by the Design Review Committee ("DRC"), and the Board of Directors of the Proprietary (the "Board") as required by the governing documents of Countryside. The Court heard evidence *ore tenus* and argument of counsel on December 18, 1990, and took the matter under advisement.

For the reasons hereinafter set forth, the request for a permanent injunction is denied, and the bill of complaint is dismissed with prejudice. To the extent consistent with this opinion, the Cross-Bill for Declaratory and Injunctive Relief is granted.

Flagpoles are not specifically prohibited in the covenants and restrictions applicable to the property of the Kings as set forth in the Amended Declaration and Consent to Amended Declaration dated October 16, 1980 (Plaintiff's Exhibit No. 1). Article VI, Section 1, of the Declaration provides in pertinent part as follows:

> no building, fence, wall or other *improvements or structures* shall be commenced, directed, placed, moved, altered or maintained upon the Property . . . until the complete plans and

specifications showing the location, nature, shape, height, material, color, type of construction and any other proposed form of change . . . shall be submitted to and approved in writing *as to safety, harmony of external design, color and location in relation to surrounding structures and topography and conformity with the design concept for the community* by a Design Review Committee designated by the Board of Directors. (Emphasis mine.)

An examination of the attachments to the Kings's application for the flagpole (*see* Plaintiff's Exhibit No. 2) and the photographs admitted into evidence (Plaintiff's Exhibits No. 11, 12 and 13; and Defendant's Exhibits No. 1, 2 and 3) clearly shows that the flagpole is an "improvement" and a "structure." This Court so finds. Therefore, the Kings were required to apply for approval of the flagpole, and the Court, therefore, does not accept their argument that the flagpole is not an improvement or a structure.

When the Kings applied, the DRC could only base its decision on the criteria set forth in the portion of Article VI, Section 1, quoted above. In fact, its denial was based on this criteria. *See* the "Remarks" of the DRC on the application (Plaintiff's Exhibit No. 2). Although the Proprietary had previously promulgated "Architectural Guidelines" (Plaintiff's Exhibit No. 9) for the benefit of the homeowners in Countryside and the DRC, it did not specifically provide guidelines for a flagpole. The "Guidelines" do provide "DRC Review Criteria" which "represent in more specific terms the general standards of the Covenants and Restrictions." *See* p. 4 of "Guidelines."

I am of the opinion that the criteria set forth in Article VI, Section 1, of the Declaration and in the "DRC Review Criteria" of the "Architectural Guidelines" do not provide sufficient objective guidelines to insure that a decision can be made on a reasonable basis. All of the criteria allow the members of the DRC or the Board to make a decision using subjective judgment. Safety, harmony of external design, color and location without the specifics of what is prohibited or what is allowed are subjective standards. They are even more subjective if they are to be considered "in relation to surrounding structures and topography and conformity with the design concept of the community." The "DRC Review Criteria" of the relation to the Countryside Open Space Concept, design compatibility, location and impact on neighbors, color, materials, workmanship and timing are also subjec-

tive. Such general subjective standards could lead to arbitrary and capricious rejections without a rational basis.

A lot owner should not be at the mercy of a majority of the DRC who are of the opinion that, for example, the color or location of the structure are appropriate in relation to the surrounding structures and topography and conformity with the design concept of the community. Such a determination cannot be objectively quantified. A lot owner should be able to know within a reasonable degree of certainty what he can or cannot construct on his lot just as much as the other lot owners should be able to know within the same degree of certainty what another lot owner can or cannot construct on his lot.

Considering the criteria to be applied by the DRC and the criteria actually applied in denying the Kings's application, the denial was based purely on the personal opinion of the individual members of the DRC. No specific guidelines were available to the members, as there would have been, for example, in an application for a swimming pool. The lack of an objective standard is not present where the Proprietary has set forth specific guidelines. The lack of an objective standard problem would be equally applicable to any application not specifically addressed in the "Architectural Guidelines." Such an application could be for a fish pond, a water fountain or a large bird feeding station (e.g., for martins), and the Proprietary would have the same problem.

Further, it is of concern to this Court that other houses in Countryside have flagpoles attached to walls or pillars. The Proprietary does not even require an application for a flagpole (no matter how many) attached to a house. Mr. King's testimony of a free-standing metal flagpole on another lot in Countryside was not refuted.

The Court rejects the Kings's argument that their application should have been acted upon by their Neighborhood Advisory Council ("NAC"). The Declaration does not require that the NAC act on an application. The NAC can act as the designated representatives of the DRC, and there are provisions for an appeal by an aggrieved party of a NAC decision to the DRC and for the right of the DRC to rescind an application granted by the NAC. *See* Article VI, Section 3, of the Declaration. However, Article VI, Section 2, of the Declaration makes it clear that an affirmative vote of a majority of the DRC is needed for an approval. The provisions of Section 3 of the same Article allow the NAC to act on behalf of the DRC, but it does not require the NAC to act on any application. There is nothing in the Declaration giving a lot

owner the right to have his application acted on by the NAC. At most, the Proprietary has a duty to refer all applications to the appropriate NAC for action. If the NAC takes action, then it merely has a duty to report its actions within 72 hours to the DRC. There is no provision that the DRC must have input from the NAC before the DRC acts. The Bylaws of the proprietary give the NAC the duty to propose to the Board rules of operation and conduct related to guidelines for design review (Article VIII, Section 2(d)(2). The actions of the NAC are merely advisory in nature. *See* Article VIII, Section 2(d)(5), of the Bylaws. Therefore, the failure of the applicable NAC to act is not a ground to attack the decisions of the DRC and the Board. The Court finds from the evidence presented that the application was forwarded (before the DRC acted) to the chairperson of the applicable NAC but that the DRC received no response from the NAC before it acted.

### May 23, 1993

This cause is before the Court on the Motion for Reconsideration filed by the Countryside Proprietary, Inc. ("Countryside") on April 23, 1991, asking this Court to reconsider its ruling as set forth in the opinion letter of January 7, 1991. Counsel argued orally on May 1, 1991. The Court has considered such argument and the Memorandum of Countryside filed with its motion. For the reasons hereinafter set forth, the Motion for Reconsideration is granted, and after reconsideration, the Court grants the permanent injunction requested by Countryside and denies the relief requested by the Defendants in their Cross-Bill.

After careful reconsideration of the prior argument of counsel and the authorities cited, I am of the opinion that I erred in my opinion letter of January 7, 1991, in determining the state of law in Virginia where restrictive covenants require approval before a structure may be constructed on a subdivision lot even though the covenants do not provide standards for approval. I was wrong in deciding that the lack of objective guidelines defeat the ability of Countryside to act on an application on a reasonable basis.

The Supreme Court of Virginia has addressed this issue and held as follows:

> Generally, a restrictive covenant for a residential subdivision which requires consent to construction or approval of plans of construction, even though the provisions of the restrictions do

not establish standards of approval, will be declared valid when such covenants apply to all the lots as a part of a uniform plan of development. But such covenants will be enforced only when there has been a reasonable employment of such restrictions.

*Friedberg v. Building Committee*, 218 Va. 659, 668 (1977).

The restrictions at issue in *Friedberg* are remarkably similar to the restrictions at issue in this case. *See* 218 Va. at 661; *cf.* the provisions of the Declaration cited [in] my letter opinion dated January 7, 1991. The covenants herein apply to all the lots in the Defendants' subdivision as a part of a uniform plan for the development thereof.

From the evidence presented at trial herein, I cannot conclude that the DRC or the Board acted unreasonably. I cannot substitute my judgment for their judgment. No other flag poles similar to the Defendants' have been previously approved or allowed to stand in Countryside. Although *Friedberg* involved a consistent uniform application of restrictive covenants over a period of thirty years, there has to be, as there is in this case, the first instance where the approval provisions have to be applied to a situation not specifically addressed in the covenants. It then became a question of whether the DRC or the Board acted reasonably in that first instance.

The Defendant's flag pole is not so *obviously* safe, in harmony of external design, color and location in relation to surrounding structures and topography and in conformity with the design concept of the community so as to make it a matter upon which reasonable persons could not differ.

All language in the opinion letter of January 7, 1991, concerning lack of objective guidelines in the Declaration or the DRC Review Criteria of the architectural Guidelines and such being subjective standards is hereby withdrawn. As the Defendants have not prevailed, the opinion letter of February 25, 1991, is also withdrawn.

Let Mr. Fleming prepare a decree consistent herewith granting Countryside the injunction requested, recovering attorney fees of $482.50 from the Defendants and dismissing the Cross-Bill.